**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARRIE M. WARREN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CV 00496 |
| | ) | |
| KENDALL COUNTY SHERIFF | ) | |
| DWIGHT BAIRD, in his official capacity | ) | Judge Thomas Durkin |
| and as successor in office to Richard | ) | Magistrate Judge Mary Rowland |
| Randall, et.al., | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants Kendall County Sheriff Dwight Baird, in his official capacity as successor in office to Richard Randall (hereinafter "the Sheriff's Office"); Kendall County, Illinois; Richard Randall; Scott Koster; and Sabrina Jennings move for judgment as a matter of law in their favor and against the plaintiff under Federal Rule of Civil Procedure 50. In support of this motion, defendants state as follows:

**Introduction**

Plaintiff Carrie Warren has presented the following claims at trial: (1) Title VII gender discrimination claim against the Sheriff's Office; (2) Title VII retaliation claim against the Sheriff's Office; (3) section 1983 equal protection claims of sex discrimination against the Sheriff's Office, Randall, Koster, and Jennings; and (4) section 1983 equal protection claims of retaliation against the Sheriff's Office, Randall, Koster, and Jennings.  As a matter of law, based on the evidence presented thus far at trial, no reasonable jury could find for Warren on any of her claims.

**Argument**

At any time before a case is submitted to the jury, a party may move for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Fed. Civ. P. 50(a)(2). Rule 50 authorizes the entry of judgment as a matter of law if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a)(1); *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008). "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Id.*

## I. No reasonable jury could find that defendants fired Warren in retaliation for her complaints of discrimination or harassment.

To succeed on her retaliation claim, Warren was required to present evidence that, when taken as whole, could permit a reasonable jury to find that one or more of the defendants terminated her because of her complaints of gender-based harassment or discrimination. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). Ultimately, the evidence on the whole must show that Warren would not have been terminated if she had not complained of gender-based harassment or discrimination but everything else had been the same. *See University of Texas Sw. Med. Ctr. V. Nassar*, 133 S.Ct. 2517, 2528 (2013) (holding that the standard for proving causation in Title VII retaliation claims is "but-for causation.")

**A. *Warren lacked a good faith belief that her work environment was hostile.***

To state a claim for retaliation, a plaintiff must show that she reasonably believed in good faith that the practice she opposed violated Title VII. *Fine v. Ryan Int'l Airl*ines, 305 F.3d 746, 752 (7th Cir. 2002). The good faith standard has both a subjective and an objective component. Plaintiff must show that she had a subjective good faith belief that the employer was engaged in unlawful employment practices, and that her belief was objectively unreasonable in light of the facts and record presented. *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997). Thus, when a plaintiff brings a retaliation claim for reporting sexual harassment or hostile work environment, she must show that the conduct was objectively hostile and that she subjectively perceived the conduct as hostile or abusive. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment is beyond Title VII's purview, as is conduct that the victim does not perceive as abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Here, Warren testified that the following internal complaints resulted in her March 2014 termination:

- 2010 complaint to sergeants about Deputy Whitkaneck calling her a bitch once.
- 2011 complaints to sergeants and Commander Jennings about Deputy Buis bullying, demeaning, and stalking her, and disseminating information about her husband.
- 2011 complaint to sergeant about Deputy Montes refusing to do his share of tasks.
- 2012 complaint to sergeant about Deputy Cantwell after dispute about nose-ring and fetching an inmate to the jail.
- 2012 conversation with deputy commander and sergeant about her opinions about the co-ed locker room.
- 2012 complaint of Deputy Baird's one-time sexist comment about women

working in the jail.

- January-February 2013 complaint to sergeant and Commander Jennings about male deputies not respecting female deputies, circulating naked pictures consensually among each other to see who had the biggest penis, and other conduct of a sexual nature in the jail, which resulted in her discipline for sexual harassment.

(Trial transcript, Vol 4-A, pp. 657-661; 575-654).

The evidence as a whole shows that Warren participated in the circulation of the naked pictures of the male deputies, and was not at all offended by them. After all, she admits she had had consensual sexual relations with and measured the penis of the very deputy whose naked pictures and videos she was shown at work. No reasonable jury would believe she was offended by seeing the naked pictures or even a vibrator at work by a female co-worker. As to her allegations that male deputies were masturbating in various parts of the jail, she admits she never saw it, and has presented no witness who has. The one-time sexist comment by Baird and one-time sexist slur by Whitkaneck are isolated, stray remarks, not pervasive. The problems with Buis, Montes, and Cantwell were simply inter-personal disputes and boorish behavior, and there is insufficient evidence for a jury to conclude they were sex harassment or gender discriminatory. "[T]he occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" would be neither pervasive nor offensive enough to be actionable. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995).

**B**. ***There is no evidence of a causal connection between Warren's complaints and her termination.***

"A superior cannot retaliate against an employee for a protected activity about which he has no knowledge." *Stephens v. Erickson*, 569 F.3d 779, 798 (7th Cir. 2009).

Here, there is no evidence that Sheriff Randall, one of the decision-makers, knew anything about Warren's complaints or discussions with her supervisors before her termination. Warren testified that during her employment, she never once called or complained to Randall about anything (Trial Transcript, Vol. 4-A, p. 575).

As for Chief Koster, the other decision-maker, the evidence shows he knew only about Warren's discipline for violation of the sexual harassment policy in February 2013, and recalls that the incident involved naked pictures of the deputies taken consensually outside the workplace and circulated among them. There is no evidence that Koster knew of any of Warren's other complaints or discussions with her supervisors.

But even if Chief Koster was aware of one of Warren's alleged complaints, "as a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive." *Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006). There is simply no evidence from which a reasonable jury can causally link Warren's termination to a retaliatory motive on the part of the individuals who ultimately made the decision to fire her – Chief Koster and Sheriff Randall.

Moreover, the timing of Warren's termination does not support an inference of retaliatory motive on the part of Chief Koster or Sheriff Randall. Even assuming that Warren's internal complaints were protected acts, the last of her complaints, in February 2013, was over a year before her termination in March 2014. Here, the undisputed record shows that all of Warren's complaints were resolved one year before

she was fired. The Seventh Circuit has "permitted retaliation charges to proceed in the face of long intervals only when the additional circumstances demonstrate that an employer's acts might not be legitimate." *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605 (7th Cir. 2001). Here, there are no additional circumstances or evidence that bridges the long time gap between her final protected activity and her termination from which a jury could infer retaliatory motive.

**C.** ***Defendants established a legitimate, non-discriminatory reason for Warren's termination and she cannot show pretext.***

The defendants presented a reason for Warren's termination – that she persistently lied in a formal disciplinary investigation and fabricated evidence to cover up the lie. Defendants' reason is supported by substantial evidence of Warren's untruthfulness. There is substantial evidence that Warren lied by (1) falsely claiming that she was only released from lunch, (2) falsely claiming that she received a phone call first from the courthouse telling her that she was no longer needed and then claiming that the phone call was from her travel agent which she mistook as being from the court; (3) presenting redacted cell phone records, claiming that a redacted phone call was the call she received from the court/travel agent; and (4) convincing her travel agent to help with her "political problem" at work by having the travel agent claim that she was the person who called Warren on the day of her jury duty when Warren would have known that was not true.

Warren has failed to provide sufficient evidence to dispute the truth of the evidence supporting the charge of untruthfulness for which she was fired. What she has

done at trial, instead, is explain why the defendants should have accepted her explanations and interpretation of the evidence. But whether the defendants' decision to fire Warren was wise, reasonable, or fair is of no concern to a reasonable jury. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008).

What Warren needs to, but has failed to show, is that the defendants' stated reason for her termination was pretext. "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a 'lie, specifically a phony reason for some action.'" *Argyropoulos,* 539 F.3d at 736. Here, there is no evidence that defendants did not honestly believe that they were terminating Warren for untruthfulness during the formal investigation and subsequent efforts to cover up her lies. After Chief Koster took over the investigation from Commander Jennings, he told Warren and her union representative that the events inside the courthouse and in the voir dire inside the courtroom were no longer the focus of his investigation; rather, his focus was on Warren's untruthfulness. Since then, Defendants have consistently maintained that position – through union arbitration, EEOC proceedings, and in this lawsuit.

**D. Koster conducted his own investigation and disregarded Jennings' findings and recommendations.**

In this case, the evidence showed that although Commander Jennings did the initial investigation into Judge Pilmer's complaint of Warren's jury service and made some findings and recommendations to Chief Koster, Koster took over and conducted his own independent investigation after Warren's lies and presentation of false or

misleading documents aroused his suspicions about her truthfulness. So, while Jennings' initial investigation had focused mainly on Warren's conduct inside the courthouse, Koster's investigation focused solely on Warren's truthfulness. After completing his independent investigation, Koster made his own findings and recommended that the Sheriff fire Warren for untruthfulness in a formal investigation and subsequent cover up. In doing so, Koster did not take into account or rely on Jennings' findings or recommendations; on the contrary, he did not agree with Jennings' findings, except on the issue of Warren lying about not knowing of the cell phone prohibition. But even on that issue, Koster made that finding based on Warren's own admissions, including that she had heard the phone messages, and a review of the summons, and signs on the courthouse front doors. So the final decision to fire Warren was taken by Sheriff Randall, solely on Koster's investigation and recommendation, and not on Jennings' investigation and findings.

Consequently, there is no basis for the cat's paw theory of liability to apply here. The cat's paw theory applies only when an employee is fired by a supervisor who himself has no discriminatory motive, but who is manipulated by a subordinate who has a discriminatory motive. *See Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1190 n. 1, 1192-94 (2011); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). In this case, even assuming Jennings had some discriminatory motive, Koster was neither manipulated by her nor did he rely on her findings or recommendations. On the contrary, Koster conducted an independent investigation, made his own findings and recommended that the Sheriff fire Warren.

Based on the evidence as a whole, no reasonable jury could find that Warren's termination was caused by her complaints of discrimination or harassment. No reasonable jury could find that Warren would not have been fired but-for her complaints of discrimination or harassment. The court should grant defendants judgment as a matter of law to all the defendants on the retaliation claims.

## II.    No reasonable jury can find that Warren was fired because of her gender.

The same standards of establishing intentional discrimination apply to Warren's claims of sex discrimination under Title VII and equal protection. *See Salas v. Wisconsin Dep't Corr.*, 493 F.3d 913, 926 (7th Cir.2007) ("The only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees."). Warren must prove that the defendants intentionally discriminated against her based upon her sex.  *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1992). The legal standard is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge." *Ortiz*, 834 F.3d at 765.

### A.  *Because Jennings did not cause or participate in the decision to fire Warren, she cannot be liable on the Section 1983 claim.*

For an individual defendant to be liable under section 1983, he or she must have participated directly in the constitutional violation. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Here, Commander Jennings initiated the investigation into Warren's jury service but Chief Koster took over the investigation and independently gathered additional evidence and made the recommendation to Sheriff Randall to terminate Warren's employment for reasons different than those recommended by Jennings. Warren's most egregious misconduct of presenting a redacted cell phone record and claiming that a redacted call came from her travel agent Fidler occurred after Jennings relinquished control of the investigation. Therefore, Jennings is entitled to judgment as a matter of law on this claim because she was not the decisionmaker and did not cause or participate in the ultimate decision to terminate Warren's employment. *See Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 448 (7th Cir. 2012)("to prove employment discrimination, a plaintiff needed direct or circumstantial evidence 'that the decisionmaker has acted for a prohibited reason.'"); *Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015)("[A] determination apart from the biased subordinate's recommendation can break the chain of causation.").

**B.** *Warren was fired not because she is a woman, but because she was untruthful.*

As noted above, Warren's March 2014 termination followed an investigation into her conduct during jury duty that was initiated by a complaint to the Sheriff's Office from Kendall County Chief Judge Tim McCann and Judge Robert Pilmer. Following his investigation, Chief Koster concluded that Warren had been untruthful in violation of the Sheriff's Office Code of Conduct during the formal investigation into the circumstances of her release from jury duty, and in connection with that investigation she fabricated evidence.

Warren contends that such conduct was not worthy of termination, but courts have repeatedly stated that employers "may terminate an employee for a good or bad reason without violating federal law. *Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015). Multiple courts have found that terminating law enforcement officers for untruthfulness is a legitimate basis for termination. Therefore, the untruthful law enforcement officer was not qualified for the job. For example, in *Thomas v. Johnson*, 788 F.3d 177 (5th Cir. 2015), a provisionary border patrol agent was terminated for lack of candor and the Fifth Circuit found that lack of candor is a legitimate basis for termination. In *Gilty v. Village of Oak Park*, 919 F.2d 1247 (7th Cir. 1990), the court affirmed summary judgment in favor of the Village of Oak Park on a race discrimination claim after the police chief fired a black police officer for falsifying his academic credentials. In its decision, the court noted that the plaintiff "does not argue, nor does case law support, the notion that 'qualified' law enforcement officers need not be 'truthful' law enforcement officers. *Id*. at 1251.

Warren has also testified that she was not untruthful because she did not realize that jurors were not allowed to have cell phones, she honestly believed that she was only released for lunch, that she did receive a phone call telling her that she was no longer needed, that she reasonably believed that the call came from the court, and that the Sheriff's Office failed to follow up on her claim that there were calls missing from her phone records. For purposes of this motion, such contentions are neither relevant nor material. The main question is whether Chief Koster honestly believed the reasons he gave for recommending Warren's termination. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012)(affirming summary judgment where employer had "honest belief" on the basis for termination and scope of investigation was a valid business judgment not subject to review); *Luster v. Illinois Dept. of Corrections*, 652 F.3d 726, 733 (7th Cir. 2011)(affirming summary judgment in favor of employer where "[a]fter a reasonable, if not perfect, investigation, the warden believed Cole's allegation" and on that basis suspended the plaintiff).

**C. *Warren cannot show that a similarly situated man was treated more favorably.***

To determine if similarly-situated co-workers outside the protected class were treated more favorably, a court examines "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that ... would allow a jury to reach an inference of discrimination or retaliation." *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 752 (7th Cir.2007). Generally this involves examining whether the two employees shared the same supervisor, were subject to the same standards and had engaged in similar conduct, without significant

12

distinguishing factors justifying the differential treatment. *Id.* However, it is a flexible analysis and above all, "common sense must guide this inquiry." *Id.*

Here, the evidence shows that the Sheriff's Office has terminated numerous male employees who have been found to have been untruthful during a formal investigation and the Sheriff's Office has submitted *Brady* letters to the State's Attorney's Office following the termination of those deputies. Chief Koster and Commander Jennings are not aware of any employee other than Warren who attempted to fabricate evidence during an investigation into his or her alleged rule violations.

Warren has identified the following incidents which she claims demonstrate that she was treated worse than similarly situated male deputies: Deputy Levy November 2011 discipline; Deputy Levy 2014 termination; Deputy Dean February 2014 discipline; Deputy Buis June 2014 discipline; and Deputy Brennan December 2013 discipline. For the cases cited by Warren, the alleged comparators had committed the misconduct of which they were accused, but the same is not true here and there is no evidence to support the conclusion (other than Levy's 2014 termination) that any of these officers were untruthful during a formal interrogation or committed any of the type of misconduct of which Warren accused.[1]

In November 2011 Commander Jennings gave Deputy Levy an unpaid three day suspension for engaging in unprofessional behavior with a female inmate. Jennings could not substantiate the allegations that Levy denied due to the lack of supporting

---

[1] See *Goodwin v. Bd. of Trustees of the Univ. of Illinois*, 442 F.3d 611, 619 (7th Cir. 2006); *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012); *Rodgers v. White*, 657 F.3d 511, 519 (7th Cir. 2011); *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013).

witnesses, and after reviewing Jennings's report, Chief Koster concurred with her findings and recommendation because while he personally believed that Levy was being untruthful, the investigation could not substantiate the allegations and there was not enough evidence to terminate his employment. Similarly in *Coleman v. Donahoe*, the court noted that an arbitrator found that the postal service lacked "just cause" to terminate the plaintiff because it could not prove that she "actually had an intent to harm [her supervisor]." 667 F.3d 835, 844 (7th Cir. 2012). For the same reasons as expressed in *Coleman*, Koster could not rely solely on his suspicions to support just cause for Levy's termination. There is no admissible evidence establishing that Levy's denials of the allegations against him in 2011 were untruthful.

Levy's 2014 termination supports defendants' position that gender plays no role in termination decisions for untruthfulness. Defendants terminated Levy for providing false statements during an official police interview into misconduct involving an inmate. While Koster believed that the inmate was credible, ultimately such credibility determinations did <u>not</u> form the basis of his recommendation for Levy's termination.

As for the February 2014 incident with Deputy Dean (who also was later terminated for untruthfulness), Koster noted that unlike Warren, Dean did not commit an act of untruthfulness or provide false information pursuant to a formal interrogation. Whether or not Dean was issued a *Brady* letter in February 2014 is not material or relevant. Warren has not claimed that she was discriminated or retaliated against because she was issued a *Brady* letter.

For the December 2013 discipline of Deputy Brennan and the June 2014

discipline of Deputy Buis for abuse of sick time and frequent tardiness, neither was untruthful during the investigation into those incidents or engaged in an elaborate intentional deception by recruiting other persons to fabricate evidence or to perpetuate a lie. The testimony of both Jennings and Koster show that the Sheriff's Office view time infractions as abuse of time, not issues of untruthfulness. As they explained, sometimes the deputies misunderstand their supervisors and believe that just because they are assigned a certain number of hours per shift, they have to uniformly put down those number of hours on their timesheets, and not the actual hours worked.

In contrast, numerous male deputies who were untruthful during formal interrogations have been terminated, such as Dean, Geisen, and Mendez. Warren seeks to distinguish Dean and Geisen on the basis that she was terminated by Sheriff Randall while Dean and Geisen were terminated by current Sheriff Baird. The relevant issue is that Warren, Dean, and Geisen were all terminated based on the recommendation of Chief Koster. Similarly, Mendez was also terminated at Koster's recommendation. Warren's argument that Deputies Dean and Levy received the benefit of progressive discipline discounts evidence that neither Dean nor Levy lied during a formal interrogation, attempted to fabricate evidence, or engaged in intentional deception during the formal investigation.

Moreover, plaintiff's witness, former sergeant Rousseau, testified that a female deputy, Porus, who fabricated evidence and was untruthful, was not terminated. This goes to show that the Sheriff's Office doesn't single out female deputies for punishment because of their gender.

Ultimately, Warren is impermissibly asking the jury to second guess defendants' disciplinary decisions and the manner in which investigations are conducted. *Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012). Warren makes no effort to distinguish *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016), by showing *sufficiently analogous* misconduct by male officers to support an inference that she was treated more harshly because of her sex. Warren has not identified an employee who was untruthful during a formal investigation, recruited someone to fabricate evidence, and engaged in intentional deception during the formal investigation. *See Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012).

**D. *Warren has no section 1983 claim against the Sheriff's Office.***

For Warren to hold the Sheriff's Office liable under section 1983, there must be an express policy, a widespread practice of discrimination against women or constitutional injury caused by a person with final policymaking authority. *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013). Warren has not presented competent, admissible evidence of an express policy or widespread practice of discrimination against women. Rather, the evidence shows that the Sheriff's Office had a written sexual harassment and non-discrimination policy during Warren's employment, and regularly provided training to its supervisors and employees. There was evidence that employees who are found to violate the policy are disciplined. For example, Sergeant Belmonte was disciplined for calling a female deputy a bitch. Another example, when supervisors learned that some deputies were using inappropriate screen savers, they ordered the deputies to remove them.

Warren has also failed to present any evidence that Sheriff Randall, who was the final policymaker, had any discriminatory animus towards women. On the contrary, it was Randall who promoted Jennings to the commander or jail administrator position. Nor has Warren presented any evidence to show any discriminatory animus on the part of Chief Koster, to whom Sheriff Randall delegated responsibility for the day-to-day administration of the Sheriff's Office. Because Warren has failed to demonstrate that persons with policymaking authority over disciplinary decisions discriminated against her based on her gender, the Sheriff's Office cannot be liable under section 1983.

III.    **Punitive damages are not warranted in § 1983 claims.**

As noted above, there is substantial evidence that Warren lied during the formal investigation into her jury service triggered by Judge Pilmer's complaint. It was reasonable for the defendants to investigate the matter once a judge complained. This is not a case where anyone was targeting Warren. And Warren's own actions and untruthfulness merited her termination under the union contract and Title VII precedent. Warren filed a grievance and went to arbitration, where she lost and the arbitrator found she was lying. Sheriff Randall didn't even know Warren had made any complains about sex discrimination or harassment. Koster knew of only one incident, but he thought she had been disciplined, not that she was complaining. As to Jennings, all said and done, each of Warren's complaints was looked into and the issues were resolved, if not by Jennings then by supervisors under her command. Finally, there is simply no evidence of any of the individual defendants having a discriminatory motive or animus against women. Under these circumstances, there is simply no basis for a

reasonable jury to award punitive damages against any of the three individual defendants. The court should not send the question of punitive damages to the jury, but instead grant judgment as a matter of law to defendants on this discrete issue.

## IV. The individual defendants are entitled to qualified immunity on the § 1983 claims.

Even assuming that a cause of action for retaliation exists under section 1983 or that Warren has satisfied all of the elements of an equal protection claim for discrimination, the individual defendants are entitled to qualified immunity. The individual defendants were all public employees acting within the course and scope of their employment. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question is not whether he should have believed that his actions were reasonable, but whether he could have, because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012).

The Seventh Circuit has long held that "the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F2d 304, 308 (7th Cir. 1987). In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012). Where, as here, the law is stated in broad

propositions, "a very high degree of prior factual particularity may be necessary." *Hope*

*v. Pelzer*, 536 U.S. 730, 740-41 (internal quotation omitted).

The Supreme Court recently emphasized this principle:

"Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017)(internal citations omitted).

The gist of defendants' qualified immunity argument is "whether a governmental official violates section 1983 when his or her investigation into a subordinate's alleged misconduct raises personal concerns regarding the subordinate's truthfulness but the government official believes that the evidence uncovered during the investigation does not rise to the level necessary to demonstrate just cause for termination consistent with the terms of the collective bargaining agreement. In such circumstances, and in light of *Coleman v. Donahoe*, 667 F.3d 835, 844 (7th Cir. 2012), the individual defendants were on notice that they could not terminate the alleged comparators and a judge or jury cannot second-guess the governmental official's business decision and determine that the official's real motivation was to discriminate (or favor) one gender over another."

In addition, Commander Jennings is entitled to qualified immunity because it is not clearly established that where a supervisor recommends termination of a subordinate (even assuming it is based on a discriminatory or retaliatory motive), where the higher up management bases the disciplinary or termination decision on

their own investigation findings which are different from the supervisor, that the supervisor could be held liable.

Finally, Chief Koster and Sheriff Randall are entitled to qualified immunity because there is no evidence that Randall had any knowledge of Warren's alleged protected activity and the only knowledge that Koster had was that Warren was disciplined a year earlier for sexual harassment, but not that she engaged in protected conduct. Both Koster and Randall determined that Warren should be disciplined without knowledge of Warren engaging in protected activity.

## Conclusion

For the foregoing reasons, the defendants request this court to grant them judgment as a matter of law on all claims.

Respectfully submitted,

**Kendall County Sheriff Dwight Baird,
Kendall County, Richard Randall,
Scott Koster, and Sabrina Jennings,**

By:     _s/Julie A. Bruch_
One of their attorneys

Julie A. Bruch, #6215813
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:  (847) 291-0200
Fax: (847) 291-9230
E-mail:  jbruch@okgc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CARRIE M. WARREN                )
              Plaintiff,        )
                                 )
        v.                   )       No. 15 CV 00496
                                 )
KENDALL COUNTY SHERIFF    )
DWIGHT BAIRD, in his official capacity )    Judge Thomas Durkin
and as successor in office to Richard    )    Magistrate Judge Mary Rowland
Randall, et al.,                     )
                                 )
            Defendants.    )
                                 )

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 28, 2017 I electronically filed the Defendants'
Motion for Judgment as a Matter of Law with the Clerk of Court using the CM/ECF
system, which will send notification of such filing to the following registered CM/ECF
participant(s):

      Colleen McLaughlin/Gregory Dierdorf
      Law Offices of Colleen M. McLaughlin
      colleen@cmmclaw.com   greg@cmmclaw.com

                              **Kendall County Sheriff Dwight Baird,
                              Kendall County, Richard Randall,
                              Scott Koster, and Sabrina Jennings,**

            By:      *s/Julie A. Bruch*
                         Julie A. Bruch, #6215813
                         O'Halloran Kosoff Geitner & Cook, LLC
                         650 Dundee Road, Suite 475
                         Northbrook, Illinois 60062
                         Telephone:  (847) 291-0200
                         E-mail:  jbruch@okgc.com