**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARRIE M. WARREN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CV 00496 |
| | ) | |
| KENDALL COUNTY SHERIFF | ) | |
| DWIGHT BAIRD, in his official capacity | ) | Judge Thomas Durkin |
| and as successor in office to Richard | ) | Magistrate Judge Mary Rowland |
| Randall, et.al., | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Kendall County Sheriff Dwight Baird, in his official capacity as successor in office to Richard Randall (hereinafter "the Sheriff's Office"); Kendall County, Illinois; Richard Randall; Scott Koster; and Sabrina Jennings move for judgment as a matter of law in their favor and against the plaintiff under Federal Rule of Civil Procedure 50. In support of this motion, defendants state as follows:

### Introduction

Plaintiff Carrie Warren has presented the following claims at trial: (1) Title VII gender discrimination claim against the Sheriff's Office and (2) section 1983 equal protection claims of gender discrimination against the Sheriff's Office, Randall, Koster, and Jennings. As a matter of law, based on the evidence presented thus far at trial, no reasonable jury could find for Warren on any of her claims.

### Argument

At any time before a case is submitted to the jury, a party may move for

judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Fed. Civ. P. 50(a)(2). Rule 50 authorizes the entry of judgment as a matter of law if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a)(1); *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008). "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Id.*

I.      **No reasonable jury can find that Warren's gender was a motivating factor in her termination.**

The Supreme Court has described a "mixed-motives" case as one in which "an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 171, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). If an employee in a mixed-motive case establishes that her gender, for instance, was a motivating factor for the employment action, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision regardless of the plaintiff's gender. *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013), as amended on denial of reh'g and reh'g en banc (June 3, 2013). The employer may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93, 123 S. Ct. 2148, 2151, 156 L. Ed. 2d 84 (2003).

The same standards of establishing intentional discrimination apply to Warren's claims of gender discrimination under Title VII and equal protection. *See Salas v. Wisconsin Dep't Corr.*, 493 F.3d 913, 926 (7th Cir.2007) ("The only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees."). Warren must prove that the defendants intentionally discriminated against her based in part upon her sex. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1992). The legal standard is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge." *Ortiz*, 834 F.3d at 765. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself .... Relevant evidence must be considered and irrelevant evidence disregarded." *Id.*

In the instant case, Warren cannot show that her gender was a motivating factor or that it played any part in Defendants' decision to terminate her. Jennings testified that Warren's gender played no role in her decision to terminate Warren. Koster testified that in reviewing Jennings's disciplinary recommendations, he never saw any indication that she was recommending harsher discipline of a deputy because of gender. (Trial transcript, Vol 2-B, p. 337). Koster and Randall both testified that they never considered gender when deciding that Warren should be terminated for her untruthfulness. (Trial transcript, Vol 2-B, pp. 336-337; Trial transcript, Vol 3-B, p. 535, 573). Koster also testified that hiring and retaining female correctional deputies is particularly challenging because the jail environment is not one that attracts many candidates. Koster opined that they receive 10 or more applications from males for

3

every 1 application from a female. The jail needs female deputies to serve the female prisoner population so the loss of a female deputy under any circumstance is very difficult on their operations. Despite the potential strain on operations from losing a female deputy, Koster did not create more lenient standards for Warren because of her gender. (Trial transcript, Vol 3-A, pp. 437-438, 510-511). The record is completely void of any evidence to support the notion that Warren's gender played a role in her termination.

Koster and Jennings testified at length about the male deputies who were disciplined for their various infractions of the Code of Conduct. In fact, Koster testified that the Sheriff's Office produced over 3000 pages of disciplinary records for the corrections division alone and that each year he reviews hundreds of disciplinary reports. (Trial transcript, Vol 3-A, p. 458) If a male deputy had done what Warren did, Koster would have recommended termination for that male deputy. (Trial transcript, Vol 3-B, p. 536). Although the Sheriff's Office never had a deputy untruthful to the extent that Warren was, they did have two male deputies, Dean and Geisen, who were untruthful during formal interrogations and were terminated. No deputy, other than Warren, had been untruthful during a formal interrogation and then enlisted a third party to make a statement that by the third party's own admission was false. (Trial transcript, Vol 3-A, p. 434).

**A.** **Because Jennings did not cause or participate in the decision to fire Warren, she cannot be liable on the Section 1983 claim.**

For an individual defendant to be liable under section 1983, he or she must have

4

participated directly in the constitutional violation. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Here, Commander Jennings initiated the investigation into Warren's jury service but Chief Koster took over the investigation and independently gathered additional evidence and made the recommendation to Sheriff Randall to terminate Warren's employment for reasons different than those recommended by Jennings. (Trial transcript, Vol 2-B, pp. 360-361, 368; Trial transcript, Vol 3-A, pp. 441-442). Warren's most egregious misconduct of presenting a redacted cell phone record and claiming that a redacted call came from her travel agent Fidler occurred after Jennings relinquished control of the investigation. (Trial transcript, Vol 2-B, pp. 375-378, 381-383; Trial transcript, Vol 3-A, pp. 429-430). Koster testified that he independently made the decision to recommend Warren's termination. (Trial transcript, Vol 2-B, pp. 368; Trial transcript, Vol 3-A, pp. 429-435, 437). Therefore, Jennings is entitled to judgment as a matter of law on this claim because she was not the decision maker and did not cause or participate in the ultimate decision to terminate Warren's employment. *See Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 448 (7th Cir. 2012)("to prove employment discrimination, a plaintiff needed direct or circumstantial evidence 'that the decisionmaker has acted for a prohibited reason.'"); *Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015)("[A] determination apart from the biased subordinate's recommendation can break the chain of causation.").

**B.** **Warren was fired not because she is a woman, but because she was untruthful.**

As noted above, Warren's March 2014 termination followed an investigation into her conduct during jury duty that was initiated by a complaint to the Sheriff's Office from Kendall County Chief Judge Tim McCann and Judge Robert Pilmer. Following his investigation, Chief Koster concluded that Warren had been untruthful in violation of the Sheriff's Office Code of Conduct during the formal investigation into the circumstances of her release from jury duty, and in connection with that investigation she fabricated evidence. (Trial transcript, Vol 3-A, pp. 440-443).

Warren contends that such conduct was not worthy of termination, but courts have repeatedly stated that employers "may terminate an employee for a good or bad reason without violating federal law. *Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015). Multiple courts have found that terminating law enforcement officers for untruthfulness is a legitimate basis for termination. Therefore, the untruthful law enforcement officer was not qualified for the job. For example, in *Thomas v. Johnson*, 788 F.3d 177 (5th Cir. 2015), a provisionary border patrol agent was terminated for lack of candor and the Fifth Circuit found that lack of candor is a legitimate basis for termination. In *Gilty v. Village of Oak Park*, 919 F.2d 1247 (7th Cir. 1990), the court affirmed summary judgment in favor of the Village of Oak Park on a race discrimination claim after the police chief fired a black police officer for falsifying his academic credentials. In its decision, the court noted that the plaintiff "does not argue, nor does case law support, the notion that 'qualified' law enforcement officers

6

need not be 'truthful' law enforcement officers. *Id.* at 1251.

Warren has also testified that she was not untruthful because she did not realize that jurors were not allowed to have cell phones, she honestly believed that she was only released for lunch, that she did receive a phone call telling her that she was no longer needed, that she reasonably believed that the call came from the court, and that the Sheriff's Office failed to follow up on her claim that there were calls missing from her phone records. For purposes of this motion, such contentions are neither relevant nor material. The main question is whether Chief Koster honestly believed the reasons he gave for recommending Warren's termination. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012)(affirming summary judgment where employer had "honest belief" on the basis for termination and scope of investigation was a valid business judgment not subject to review); *Luster v. Illinois Dept. of Corrections*, 652 F.3d 726, 733 (7th Cir. 2011)(affirming summary judgment in favor of employer where "[a]fter a reasonable, if not perfect, investigation, the warden believed Cole's allegation" and on that basis suspended the plaintiff).

## C. Warren cannot show that a similarly situated man was treated more favorably.

To determine if similarly-situated co-workers outside the protected class were treated more favorably, a court examines "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that ... would allow a jury to reach an inference of discrimination or retaliation." *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 752 (7th Cir.2007). To establish

that her male co-workers were similarly situated, Warren must show that they were directly comparable to her in all material respects although they need not be identical in every conceivable way. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). Generally this involves examining whether the two employees shared the same supervisor, were subject to the same standards and had engaged in similar conduct, without significant differentiating factors or mitigating circumstances that would distinguish their conduct or justify the employer's differential treatment of them. *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 507 (7th Cir. 2017). The similarly-situated inquiry is flexible, common-sense, and factual and essentially asks whether there are there enough common features between the individuals to allow a meaningful comparison. *Johnson*, 892 F.3d at 895.

Chief Koster testified that over the years, he has looked at hundreds of investigation reports and has never seen a situation as egregious as this one in which an employee is not only untruthful during a formal investigation, but also coerces a third party to provide false information as part of that investigation. (Trial transcript, Vol 2-B, pp. 382-383). Chief Koster and Commander Jennings are not aware of any employee other than Warren who attempted to fabricate evidence during an investigation into his or her alleged rule violations. The Sheriff's Office has terminated numerous male employees who have been found to have been untruthful during a formal investigation.

Warren has identified the following incidents which she claims demonstrate that she was treated worse than similarly situated male deputies: Deputy Levy November 2011 discipline; Deputy Levy 2014 termination; Deputy Dean February 2014 discipline;

8

Deputy Buis June 2014 discipline; Deputy Brennan December 2013 discipline; Deputy Crumly December 2012 discipline; and Deputy Graham May 2013 discipline. For the cases cited by Warren, the alleged comparators admitted the misconduct of which they were accused, but the same is not true here and there is no evidence to support the conclusion (other than Levy's 2014 termination) that any of these officers were untruthful during a formal interrogation or committed any of the type of misconduct of which Warren is accused.[1] (Trial transcript, Vol 3-A, pp. 358-471, 479-498).

In November 2011 Commander Jennings gave Deputy Levy an unpaid three day suspension for engaging in unprofessional behavior with a female inmate. Jennings could not substantiate the allegations that Levy denied due to the lack of supporting witnesses, and after reviewing Jennings's report, Chief Koster concurred with her findings and recommendation because while he personally believed that Levy was being untruthful about whether Levy solicited the letter from the inmate, the investigation could not substantiate the allegations and there was not enough evidence to terminate his employment. Similarly in *Coleman v. Donahoe*, the court noted that an arbitrator found that the postal service lacked "just cause" to terminate the plaintiff because it could not prove that she "actually had an intent to harm [her supervisor]." 667 F.3d 835, 844 (7th Cir. 2012). For the same reasons as expressed in *Coleman*, Koster could not rely solely on his suspicions to support just cause for Levy's termination. There is no admissible evidence establishing that Levy's denials of the allegations

---

[1] See *Goodwin v. Bd. of Trustees of the Univ. of Illinois,* 442 F.3d 611, 619 (7th Cir. 2006); *Coleman v. Donahoe,* 667 F.3d 835, 851 (7th Cir. 2012); *Rodgers v. White,* 657 F.3d 511, 519 (7th Cir. 2011); *Ezell v. Potter,* 400 F.3d 1041, 1050 (7th Cir. 2005); *Perez v. Thorntons, Inc.,* 731 F.3d 699, 704 (7th Cir. 2013).

against him in 2011 were untruthful.

Levy's 2014 termination supports defendants' position that gender plays no role in termination decisions for untruthfulness. Defendants terminated Levy for providing false statements during an official police interview into misconduct involving an inmate. While Koster believed that the inmate was credible, ultimately such credibility determinations did <u>not</u> form the basis of his recommendation for Levy's termination.

As for the February 2014 incident with Deputy Dean (who also was later terminated for untruthfulness), Koster noted that unlike Warren, Dean did not commit an act of untruthfulness or provide false information pursuant to a formal interrogation.

In December 2012, Deputy Crumly was disciplined for providing food to inmates and receiving gifts from inmates. During his informal interrogation, Deputy Crumly was asked whether he received a gift from an inmate and he indicated that he had. Crumly had received pickles and soap from a work-release inmate. He was also asked whether he gave food to an inmate and he indicated that he had brought venison stew to the jail and gave some to an inmate. There were witness statements indicating that the stew was shared with more than one inmate, but the incident was over 3 years old and Koster thought the admission of providing the food to inmates was more important than the recollection of whether it was one or more inmates who received it. Crumly admitted his wrong doing and received a 5-day suspension for it.

In May 2013, Deputy Graham was disciplined for failing to report that he drew his Taser on an inmate although he did not discharge it. The inmate was being disrespectful and combative so Graham drew his Taser on the inmate. Graham never

10

deployed the Taser but he should have included in his report that the weapon had been drawn. Graham admitted failing to include the information in his report and was disciplined with a written reprimand. Graham was never untruthful about the use of his Taser.

For the December 2013 discipline of Deputy Brennan and the June 2014 discipline of Deputy Buis for abuse of sick time and frequent tardiness, neither was untruthful during the investigation into those incidents or engaged in an elaborate intentional deception by recruiting other persons to fabricate evidence or to perpetuate a lie. The testimony of both Jennings and Koster show that the Sheriff's Office view time infractions as abuse of time, not issues of untruthfulness. As they explained, sometimes the deputies misunderstand their supervisors and believe that just because they are assigned a certain number of hours per shift, they have to uniformly put down those numbers of hours on their timesheets, and not the actual hours worked.

Koster also testified that he disciplined female deputies for sick leave abuse in the same manner as male deputies. Deputy Jean Dunahoe, a corrections deputy, called in sick stating that she could not report for duty. Subsequently, Commander Jennings either saw Dunahoe or ran into her at Buffalo Wild Wings having dinner with her family. Deputy Dunahoe was disciplined with a one-day suspension with options rather than being disciplined for a truthfulness violation. This goes to show that the Sheriff's Office is consistent when issuing discipline for sick leave regardless of the deputy's gender.

Contrary to Warren's claims of preferential treatment for male deputies, several

male deputies who were untruthful during formal interrogations have been terminated, such as Dean and Geisen. Warren seeks to distinguish Dean and Geisen on the basis that she was terminated by Sheriff Randall while Dean and Geisen were terminated by current Sheriff Baird. This is a distinction without a difference. The relevant issue is that Warren, Dean, and Geisen were all terminated based on the recommendation of Chief Koster. In any disciplinary incidents prior to their ultimate termination, Deputies Dean and Levy never lied during a formal interrogation, attempted to fabricate evidence, or engaged in intentional deception during the formal investigation.

Ultimately, Warren is impermissibly asking the jury to second guess defendants' disciplinary decisions and the manner in which investigations are conducted. *Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012). Warren makes no effort to distinguish *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016), by showing *sufficiently analogous* misconduct by male officers to support an inference that she was treated more harshly in part because of her sex. Warren has not identified an employee who was untruthful during a formal investigation, recruited someone to fabricate evidence, and engaged in intentional deception during the formal investigation. *See Twiggs v. Selig*, 679 F.3d 990, 994 (8th Cir. 2012).

### D.    Warren has no section 1983 claim against the Sheriff's Office.

For Warren to hold the Sheriff's Office liable under section 1983, there must be an express policy, a widespread practice of discrimination against women or constitutional injury caused by a person with final policymaking authority. *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013). Warren has not presented competent, admissible

12

evidence of an express policy or widespread practice of discrimination against women. Rather, the evidence shows that the Sheriff's Office Code of Conduct was enforced consistently regardless of whether the deputy who violated a particular provision was male or female.

Warren has also failed to present any evidence that Sheriff Randall, who was the final policymaker, had any discriminatory animus towards women. On the contrary, it was Randall who promoted Jennings to the commander or jail administrator position. (Trial transcript, Vol 3-B, pp. 571, 573). Nor has Warren presented any evidence to show any discriminatory animus on the part of Chief Koster, to whom Sheriff Randall delegated responsibility for the day-to-day administration of the Sheriff's Office. (Trial transcript, Vol 3-B, pp. 535-536, 572-573). Because Warren has failed to demonstrate that persons with policymaking authority over disciplinary decisions discriminated against her based on her gender, the Sheriff's Office cannot be liable under section 1983.

## II.   Warren's perjury merits the dismissal of her claims with prejudice.

Perjury is defined as giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Kinsella v. American Airlines, Inc.*, 685 F. Supp.2d 891, 904 (N.D. Ill.  Feb. 9, 2010); see also *United States v. Bermea-Boone*, 563 F.3d 621, 626-27 (7th Cir.2009) (Defendant's perjury by providing elaborate, detailed and deliberate mistruths concerning material facts of drug conspiracy justified two-level obstruction of justice enhancement for his sentence since his statements denying knowledge of presence of cocaine in truck and participation in drug conspiracy could not be explained away by

13

allegedly "muddled" memory of events). Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press her case. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir.2003). A district court has the inherent authority to sanction conduct that abuses the judicial process. *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir.2008). The sanction imposed should be proportionate to the gravity of the offense. *Id.* Though "particularly severe," the sanction of dismissal is within the court's discretion." *Id.*

Perjury is different from confusion, mistake or faulty memory; it requires the willful intent to provide false testimony on a material matter. *Wallace v. McGlothan*, 606 F.3d 410, 426 (7th Cir. 2010). To dismiss a case for perjury, the court must find willfulness, bad faith or fault. *Id.*

The instant case is rife with examples of willful acts of untruthfulness. Warren intentionally embellished material parts of her testimony to bolster her claims of gender discrimination especially after losing at her first trial in April 2017, when the jury returned a verdict in favor of defendants on all counts. Warren testified at her deposition, her arbitration hearing and at her first trial. After repeatedly failing to prove her claims, Warren now adds new details to her testimony in a last, desperate attempt to convince the jury that she was terminated in part because of her gender. While inconsistencies in Warren's deposition and trial testimony will generally provide fertile ground for vigorous impeachment and diminish Warren's credibility before the jury, the inconsistent testimony may amount to perjury if Warren's intent was to give

14

false testimony on a material matter. *Montano v. City of Chicago*, 535 F.3d at 566.  In this case, Warren continues to embellish her testimony regarding the call she allegedly received on her cell phone on January 6, 2014, telling her she did not need to return to the courthouse to complete her jury duty.  It was Warren's explanation of the existence and nature of this call that eventually led to her termination for untruthfulness.  Since that was the primary reason for Warren's termination, it was definitely a material matter.

Because the instances where Warren testified perjuriously in this case are too numerous to set forth in the body of this motion, Defendants have attached a summary of Warren's perjured testimony as an exhibit. (See Exhibit A).[2]

### III.    Future emotional damages are not warranted based on evidence in the record

Plaintiff's testimony cannot support a claim for emotional damages in the future, and there has been no diagnosis or expert testimony that her purported emotional distress is expected to last.  There is no evidence in the record, other than Warren's own testimony, that future emotional distress is reasonably expected to continue. See *Denius v. Dunlap,* 330 F.3d 919 (7th Cir. 2003)(bare allegations of emotional distress by plaintiff were insufficient to allow the issue to go to the jury). When the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements. *Biggs v. Village of Dupo,* 892 F.2d 1298, 1304 (7th Cir.1990).

---

[2] Defendants reserve the right to supplement the Exhibit upon review of transcripts from this proceeding.

Warren did not offer any expert witness to support her contention that she expects to continue to suffer from emotional distress. On the contrary, Warren's life-long friend from Iowa, Jennifer Mallon, testified that at the time Warren was terminated, she was not "mentally present often" and this lasted about a year. (Trial transcript, Vol. 4-A, p. 728). Warren herself testified that immediately following her termination she did not want to get out of bed or do anything, but now she is working two jobs. The issue of future emotional distress is not supported by the record and should not be sent to the jury.

**IV. Punitive damages are not warranted in § 1983 claims.**

As noted above, there is substantial evidence that Warren lied during the formal investigation into her jury service triggered by Judge Pilmer's complaint. It was reasonable for the defendants to investigate the matter once a judge complained. This is not a case where anyone was targeting Warren. There is no evidence of malice or reckless disregard for Warren's rights. Commander Jennings testified that when she first spoke to Warren she believed what Warren told her. It was Warren who brought up the issue of the phone call she allegedly received while getting lunch at McDonalds and then Warren was unable to prove she received the call.

Chief Koster had a similar experience with Warren during a meeting with Stomper, Warren's union business agent, when she provided the redacted phone records and stated that the redacted call was from her travel agent Christine Fidler. Koster knew that was a lie because Detective Ratkovich had already interviewed Fidler and learned she did not call Warren on January 6. (Trial transcript, Vol 3-A, pp. 431-

435).  Koster actually stepped out of the meeting with Warren to confront Stomper to ask, "Are you really going to give me false information here, and are you going to lie for and with your employee? You're putting me in a no-win—you're giving me nowhere to go. I'm—I have no choice. I'm going to have [] no choice in my recommendation and ultimate determination. Do you really want to do this?" (Trial transcript, Vol 3-A, p. 435). Warren's own actions and untruthfulness merited her termination under the union contract and Title VII precedent. Warren filed a grievance and went to arbitration, where she lost and the arbitrator found she was lying.

Finally, there is simply no evidence of any of the individual defendants having a discriminatory motive or animus against women. Under these circumstances, there is simply no basis for a reasonable jury to award punitive damages against any of the three individual defendants. The court should not send the question of punitive damages to the jury, but instead grant judgment as a matter of law to defendants on this discrete issue.

## V.  The individual defendants are entitled to qualified immunity on the § 1983 claim.

Even assuming that Warren has satisfied all of the elements of an equal protection claim for discrimination, the individual defendants are entitled to qualified immunity. The individual defendants were all public employees acting within the course and scope of their employment. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

17

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question is not whether he should have believed that his actions were reasonable, but whether he could have, because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012).

The Seventh Circuit has long held that "the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F2d 304, 308 (7th Cir. 1987). In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012). Where, as here, the law is stated in broad propositions, "a very high degree of prior factual particularity may be necessary." *Hope v. Pelzer*, 536 U.S. 730, 740-41 (internal quotation omitted).

The Supreme Court recently emphasized this principle:

> "Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."
> *White v. Pauly*, 137 S. Ct. 548, 552 (2017)(internal citations omitted).

The gist of defendants' qualified immunity argument is "whether a governmental official violates section 1983 when his or her investigation into a subordinate's alleged misconduct raises personal concerns regarding the subordinate's truthfulness but the government official believes that the evidence uncovered during

the investigation does not rise to the level necessary to demonstrate just cause for termination consistent with the terms of the collective bargaining agreement. In such circumstances, and in light of *Coleman v. Donahoe*, 667 F.3d 835, 844 (7th Cir. 2012), the individual defendants were on notice that they could not terminate the alleged comparators and a judge or jury cannot second-guess the governmental official's business decision and determine that the official's real motivation was to discriminate (or favor) one gender over another."

Here, Koster testified that when it comes to determining appropriate discipline, "there are always examples where the conduct that they committed originally is so egregious that none of those factors can mitigate it, but most often most forms of conduct are not terminating offenses, and they wouldn't hold up as terminating offenses through a grievance procedure that the union, you now, could file or whatever." (Trial transcript, Vol 2-B, pp. 334-335).

But, in light of *Coleman*, it was not clearly established at the time of Warren's termination that a judge or jury could second guess and infer a gender-discriminatory motive from the business decision of government officials such as Koster, Randall, and Jennings not to recommend or terminate a male employee such as Deputy Levy, for example, where even though Koster personally believed Levy was untruthful, he lacked evidence sufficient to demonstrate just cause under the collective bargaining agreement.

In addition, Commander Jennings is entitled to qualified immunity because it is not clearly established that where a supervisor recommends termination of a subordinate (even assuming it is based on a discriminatory motive), where the higher

up management bases the disciplinary or termination decision on their own investigation findings which are different from the supervisor, that the supervisor could be held liable.

## Conclusion

For the foregoing reasons, the defendants request this court to grant them judgment as a matter of law on all claims.

Respectfully submitted,

**Kendall County Sheriff Dwight Baird,
Kendall County, Richard Randall,
Scott Koster, and Sabrina Jennings,**

By:     *s/Julie A. Bruch*
        One of their attorneys

Julie A. Bruch, #6215813
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:  (847) 291-0200
Fax: (847) 291-9230
E-mail:  jbruch@okgc.com

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARRIE M. WARREN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CV 00496 |
| | ) | |
| KENDALL COUNTY SHERIFF | ) | |
| DWIGHT BAIRD, in his official capacity | ) | Judge Thomas Durkin |
| and as successor in office to Richard | ) | Magistrate Judge Mary Rowland |
| Randall, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2018 I electronically filed the Defendants' Second Motion for Judgment as a Matter of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following registered CM/ECF participant(s):

Colleen McLaughlin
Law Offices of Colleen M. McLaughlin
colleen@cmmclaw.com

Karen J. Doran
Karen J. Doran, Attorney at Law, LLC
Karen@karendoranlaw.com

**Kendall County Sheriff Dwight Baird,
Kendall County, Richard Randall,
Scott Koster, and Sabrina Jennings,**

By: *s/Julie A. Bruch*
   Julie A. Bruch, #6215813
   O'Halloran Kosoff Geitner & Cook, LLC
   650 Dundee Road, Suite 475
   Northbrook, Illinois 60062
   Telephone: (847) 291-0200
   E-mail: jbruch@okgc.com